[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 14, 2012
JOHN LEY
CLERK

_____

No. 09-12105

_____

D. C. Docket No. 06-00218-CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE HOEY MORRIS,
a.k.a. Johnny Ray Fortune,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(September 14, 2012)

Before ANDERSON and EDMONDSON, Circuit Judges, and EDENFIELD,[*]
District Judge.

_____

[*]Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

PER CURIAM:

On direct appeal, Defendant challenges his conviction and 120-month imprisonment sentence for making a false statement in an application for a passport, in violation of 18 U.S.C. § 1542.

Briefly stated, Defendant contends that he was incompetent to proceed pro se at sentencing and that he could not have voluntarily and knowingly waived his right to counsel. Defendant also contends that proceeding pro se violated his due process rights; and that his counsel were ineffective.

The District Court committed no error in finding and concluding -- based in part on a reliable psychiatric report and on Defendant's own acts -- that Defendant was competent and that Defendant knowingly and voluntarily waived his right to counsel at sentencing. Furthermore, each of Defendant's ancillary contentions is without merit. We affirm Defendant's conviction and sentence.

BACKGROUND

Highly specific facts drive the outcome of this case. So, we set forth the facts in detail. We highlight especially Defendant's sometimes-competent and

2

sometimes-incompetent status at the different stages of trial and the acts of Defendant's many different lawyers.

A federal grand jury indicted Defendant for making a false statement in an application for a passport. The judge appointed Jon Carlton Taylor to represent Defendant at trial. Defendant waived his right to testify at trial, but revealed during a colloquy with the court that he suffered from Post-traumatic Stress Disorder ("PTSD").[1] Defendant also revealed that he was taking different medications.[2] Taylor and the government's lawyer -- Susan Redmond -- knew of no reason to question Defendant's competence to waive his right to testify at trial. And Defendant himself explicitly raised no issue about his competence. The District Court found Defendant competent to waive his right to testify. The jury convicted Defendant.

After the guilt phase, but before sentencing, Defendant retained Susan G. James to represent him. James entered an appearance as Defendant's lawyer on 15 December 2006. The District Court granted Taylor's motion to withdraw as

---

[1]Defendant served in the United States Army during the Vietnam War and received an honorable discharge.

[2]The Presentence Investigation Report ("PSI") also indicated that Defendant took various psychotropic medications and had earlier been hospitalized on several occasions for mental-health reasons. The District Court took judicial notice of the fact that the psychotropic medications prescribed to Defendant were commonly used to treat schizophrenia and bipolar disorder.

3

counsel. Based on Defendant's PTSD and a determination of 100% disability by the Veterans Administration, James moved the court (on 26 February 2007) for psychiatric testing of Defendant. James filed a renewed motion for psychiatric testing on 18 May 2007. The motion cited, among other things, Defendant's "bizarre" behavior, that Defendant chewed his fingernails off, and that Defendant forwarded to the District Court a child-pornography book called "Virgin Bride.net." Defendant apparently authored the book. James also noted that she believed Defendant was seemingly obsessed with issues not pertinent to his case and that Defendant seemed incapable of focusing on issues pertinent to his sentencing.

The same day -- 18 May 2007 -- James filed a motion to withdraw as counsel. At a 21 May 2007 hearing, James suggested that Defendant had also forwarded her a copy of his book that may have contained child pornography, which may have put James in violation of the law and raised other ethical concerns.

The District Court granted James's motion to withdraw; and over Defendant's objection, the court reappointed Taylor as defense counsel. The District Court construed Defendant's objections as a motion to appoint new and

4

different counsel, which the court denied.[3]  Taylor reiterated concerns about Defendant's competency to go through sentencing.  Taylor noted what he perceived to be a change in Defendant's behavior in the months since trial.

On 17 July 2007, the District Court granted Defendant's motion for psychiatric examination to determine Defendant's competency for sentencing. The District Court wrote that "it is possible that between trial and sentencing, [Defendant] has slipped from competency to incompetency."  The District Court appointed Dr. Guy Renfro to perform a psychological evaluation of Defendant, and the court continued to a later date Defendant's sentencing hearing.[4]

On 12 December 2007, Taylor moved to withdraw as Defendant's lawyer because Defendant had filed a complaint against Taylor with the Alabama bar as well as a lawsuit in federal court.  Defendant, in turn, informed the court that Defendant could not work with Taylor.  Defendant also contended that the government had caused James, his earlier lawyer, to withdraw.  The District Court granted Taylor's motion to withdraw on 11 January 2008.

---

[3]During June and July 2007, Defendant also made a series of pro se motions and submissions to the District Court.  The District Court denied all of the motions.

[4]The District Court continued the date of the sentencing hearing on several additional occasions to allow Dr. Renfro more time to complete an evaluation and produce a report.  In the months between the court's ordering of a psychological evaluation and when the court adjudged Defendant competent to undergo sentencing, Defendant repeatedly filed pro se motions and objections.

The District Court received Dr. Renfro's psychological evaluation of Defendant on 14 January 2008. The report noted that Defendant exhibited signs of anxiety and delusional thoughts of a conspiracy against Defendant by various law enforcement agents, politicians, and lawyers. The report provided a diagnosis of PTSD, bipolar disorder with psychotic features, and an inflated sense of self-worth (along with hypothyroidism and COPD). Although the report estimated that Defendant possessed above-average intelligence and possessed a rational understanding of the legal process, the report concluded that delusions of persecution prevented Defendant from functioning at a sentencing hearing. The report recommended Defendant receive treatment and undergo additional evaluation.

On 16 January 2008, the District Court appointed lawyer Richard K. Keith to represent Defendant. On 17 January 2008, Daniel G. Hamm accepted appointment as Defendant's lawyer. The District Court then granted Keith's motion to withdraw.

On 2 May 2008, the District Court found Defendant to be incompetent for sentencing. Pursuant to 18 U.S.C. § 4241(d)(1), the court ordered the Attorney General to hospitalize Defendant to determine whether a substantial probability existed that Defendant would become competent -- and therefore become able to

undergo sentencing -- in the foreseeable future. Defendant was moved to the Federal Medical Center in Butner, North Carolina ("the Center"). The Center provided the court with status updates on Defendant's condition throughout Defendant's stay at the facility.

The Center completed a psychiatric evaluation of Defendant in September 2008; the evaluation was filed in the District Court on 6 October 2008. The evaluation concluded -- like Dr. Renfro's report had concluded -- that Defendant was mentally incompetent to understand the nature and consequences of the sentencing proceedings and also unable to assist in his own defense. But the evaluation also predicted that with additional hospitalization and treatment, Defendant's competency to be sentenced might be restored.

Based on the Center's evaluation, on 21 October 2008, the District Court again found Defendant to be incompetent and therefore unable to be sentenced. The court also found, however, that a substantial probability existed that Defendant would in the foreseeable future attain the competence necessary to be sentenced.

In February 2009, the Center completed another psychiatric evaluation of Defendant. The Center concluded that Defendant was competent to stand trial, able to understand the nature and consequences of the proceedings against him,

and able to assist properly in his own defense. Briefly stated, the February 2009 evaluation reiterated some of Defendant's past mental health issues and noted Defendant's genuine distress. But the February 2009 evaluation also concluded that Defendant was not delusional or psychotic and did not suffer from severe mental disease or defect. Instead, the principal diagnosis in this report was malingering.[5] The February 2009 evaluation also noted an impression that Defendant possessed antisocial personality traits.

On 16 April 2009, the District Court held a hearing on Defendant's motion to dismiss counsel,[6] Defendant's competency to be sentenced, and Defendant's sentencing. This hearing is central to this appeal.

At the hearing, Defendant complained that Hamm did not pursue Defendant's case aggressively enough.[7] Defendant insisted upon representation from his previous lawyer, James. The court informed Defendant that James was

[5]The February 2009 evaluation utilizes the American Psychiatric Association's definition of "malingering": "Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as . . . evading criminal prosecution[.]"

[6]Defendant filed a pro se motion seeking to dismiss lawyer Hamm. Briefly stated, in the motion Defendant contended that he had retained James to represent him, that he had been "medicated to the point of virtual incompetency" at the hearing where James sought to withdraw, that the government engaged in misconduct, and that Hamm's service as Defendant's lawyer weakened claims Defendant might have against the government and James.

[7]Hamm said that Defendant called Hamm from jail and indicated that Defendant wished to represent himself. When Hamm went to the jail, though, Defendant refused to meet.

8

no longer Defendant's lawyer. The court asked Defendant if he wished to represent himself. Defendant responded that he did not wish to proceed pro se; Defendant insisted that James was his retained lawyer. Defendant remained largely uncooperative and insisted that Hamm was not aggressive enough and that James was his true lawyer. The court noted that "I have a history of knowing [Defendant]. I do know that [Defendant] tends to misrepresent things, and I do know that he tends to vary in his representations." The court further noted that Defendant was "an incredibly difficult client." At this point, the court denied Defendant's motion to dismiss Hamm as counsel.

The court then turned to Defendant's competency to be sentenced. The court asked the parties if any evidence existed to supplement the Center's February 2009 evaluation (which had found Defendant to be competent). The parties reported that no additional evidence existed.[8] Explicitly citing the Center's February 2009 evaluation, the District Court found Defendant to be competent.

---

[8]Defendant made a reference to additional medical reports but stated that these reports were stolen. The government lawyer (Redmond) and Hamm also mentioned other medical records to which Defendant might have been referring. Hamm and Redmond also relayed their belief that Defendant might be referencing competency-related medical reports prepared pre-trial for the guilt-phase: years in the past. According to the District Court, in the light of the Center's February 2009 evaluation finding Defendant competent, any guilt-phase records would have no bearing on Defendant's competency at the 16 April 2009 post-trial hearing. So, the District Court declined to inquire further about other records.

The District Court then went on with sentencing. The court recognized Defendant's pro se-filed objections to the PSI and ordered a brief recess so that Defendant could review the PSI with Hamm, Defendant's appointed lawyer. After the recess, Hamm informed the court that Defendant refused to speak with Hamm about the PSI.

The court engaged Defendant in a colloquy. Defendant insisted upon having James serve as his lawyer and advanced allegations of government misconduct. Stating that Defendant "clearly doesn't want to be represented by Mr. Hamm and [Defendant] doesn't want to represent himself either," the court provided the parties with our decision in United States v. Garey.[9] Noting Garey's discussion of a procedure through which to handle situations like Defendant's, the court ordered a brief recess for the parties to review Garey.

The court reconvened and proceeded -- citing Garey -- with sentencing. The court advised Defendant of his rights and sought to determine whether Defendant wished to waive his right to counsel. Defendant refused to answer many of the court's questions but repeatedly referenced his desire to be represented by James. Defendant at one point stopped answering entirely and just stared down at the table.

---

[9]540 F.3d 1253 (11th Cir. 2008) (en banc). We will discuss Garey more.

10

Although Defendant insisted that he did not waive his right to a lawyer (specifically, James), the District Court construed Defendant's acts as a knowing and voluntary waiver of the right to counsel: "I find that the defendant, through his actions, has knowingly and voluntarily waived his right to counsel in that he has refused to represent himself admittedly, but he has also refused to have Mr. Hamm represent him." Having found Defendant competent, the District Court proceeded with Defendant representing himself at sentencing. Although Hamm was no longer Defendant's counsel for sentencing, the court also did appoint Hamm as "advisory" or standby counsel.

After allowing Defendant to make arguments, the court addressed objections to the PSI. Defendant offered arguments about, for example, why some enhancements should not apply and why a prior conviction should not be counted. The court calculated that the Sentencing Guidelines range would be 188-235 months of imprisonment, but a 120-month statutory maximum applied; so, the Guidelines range was 120 months' imprisonment. The court imposed a sentence of 120 months of imprisonment, a 3-year term of supervised release, and a $100 special assessment fee (in addition to special conditions). Defendant appeals.

11

DISCUSSION

Defendant's Competency to Waive the Right to Counsel

Defendant contends that the District Court committed reversible error in allowing Defendant to waive his right to counsel at sentencing. Briefly stated, Defendant contends he was incompetent to represent himself and that the District Court "erroneously required [Defendant] to proceed pro se at sentencing," in violation of the Supreme Court's decision in Indiana v. Edwards.[10]

Even if we assume arguendo -- without expressly deciding -- that a higher standard might govern the issue of competence to waive counsel and proceed pro se at trial or sentencing (as opposed to the Dusky[11] standard governing the issue of competence to stand trial with counsel), we need not articulate any precise standard for the former; the record here amply supports the district court's conclusion (under any reasonable standard) that Defendant was competent to waive counsel and proceed to sentencing as he did. This conclusion is especially

---

[10] 128 S. Ct. 2379 (2008).

[11] 80 S. Ct. 788 (1960) (per curiam).

12

true in the light of the fact that Defendant did not preserve this issue below and thus our review is for plain error.

Defendant's statements demonstrated Defendant's ability to understand and to communicate objections and arguments to the court. For example, Defendant filed objections to the PSI in which he offered mitigating factors and challenged factual assertions. And Defendant also coherently argued objections to the court about why certain enhancements did not apply and why a prior conviction should not count for criminal history purposes. Significantly, the district court had before it a thorough psychiatric evaluation that indicated that Defendant had the ability to communicate thoughts in a clear and concise manner, that he had an understanding of the convictions and the penalties he faced, as well as a good knowledge of legal concepts and the evidence against him, and that Defendant was malingering.

Thus, we cannot conclude that the district court committed reversible error in determining that Defendant was competent to waive counsel and to proceed to sentencing with only standby counsel.[12]

---

[12] Edwards does not require a different result. While Edwards says many things about competency, Edwards decides a different question focused on the right of a defendant to represent himself: whether a court may lawfully require a criminal defendant who -- although competent to stand trial -- suffers from severe mental illness to proceed with counsel, despite the defendant's request for self-representation. Edwards, 128 S. Ct. at 2385-88. No holding in Edwards controls this case.

13

Knowing, Intelligent, and Voluntary Waiver of Counsel

Whether a defendant's waiver of counsel was knowing and voluntary is a mixed question of law and fact that we review de novo. Garey, 540 F.3d at 1268. On direct appeal, the government bears the burden of proving a valid waiver. Id. A waiver of the right to counsel must be knowing and voluntary, and the validity of a waiver depends upon the particular facts and circumstances of a case. Id. at 1266.

Broadly speaking, all criminal defendants have the right to counsel. But defendants do not have an unqualified right to counsel of their choice; and absent good cause to dismiss a court-appointed lawyer, an indigent defendant must accept the appointed lawyer or proceed pro se. Id. at 1263-64.

A defendant who rejects his court-appointed lawyer and also refuses to proceed pro se "may waive his right to counsel by his uncooperative conduct, so long as his decision is made with knowledge of his options and the consequences of his choice." Id. at 1266. "[W]hen confronted with a defendant who has voluntarily waived counsel by his conduct and who refuses to provide clear answers to questions regarding his Sixth Amendment rights, it is enough for the court to inform the defendant unambiguously of the penalties he faces if convicted

14

and to provide him with a general sense of the challenges he is likely to confront as a pro se litigant." Id. at 1267.[13]

We conclude that, in this case, a competent Defendant knowingly and voluntarily waived his right to counsel. Defendant refused to allow a court-appointed lawyer to represent him, refused to proceed pro se, and refused to engage the District Court in a meaningful discussion about his right to counsel. Instead, Defendant repeatedly insisted upon representation by lawyer James. But James was entirely out of the case: James already had asked for and received permission to withdraw.

After finding Defendant competent based on both the Defendant's own acts and on a thorough psychiatric evaluation of Defendant, the District Court cited our decision in Garey and informed Defendant -- in detail -- of the possible penalties he faced and the dangers of self-representation. The District Court also informed Defendant that lawyer Hamm was available to serve as counsel,[14] and Defendant

---

[13]We have identified several factors that are important in determining whether a waiver is knowing and voluntary. United States v. Kimball, 291 F.3d 726, 730-31 (11th Cir. 2002) (per curiam). On the facts of this case, the Kimball factors support the finding and conclusion that Defendant's waiver was knowing and voluntary.

[14]After finding a knowing and voluntary waiver of counsel, the District Court appointed Hamm to serve as standby counsel.

15

was warned of the consequences of Defendant's refusal to cooperate with the court.  Defendant then, nevertheless, refused to cooperate with the court.

Under Garey and in the light of the Kimball factors, the District Court properly found and concluded that, through Defendant's uncooperative conduct, Defendant knowingly and voluntarily waived his right to counsel.  "A dialogue cannot be forced[.]" Garey, 540 F.3d at 1266.  By his acts, Defendant validly waived his right to counsel at sentencing.

Due Process

Apart from the pro-se-representation issue, Defendant contends that his supposed mental incompetence rendered his sentencing "fundamentally unfair," in violation of the Fifth Amendment's guarantee of due process.

We review the scope of constitutional rights de novo.  United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005) (per curiam).  Where a defendant -- as here -- makes no objection before the district court, we review only for plain error.  United States v. Olano, 113 S. Ct. 1770, 1776-79 (1993).

Due process requires that criminal defendants be afforded the opportunity to present favorable evidence.  United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir.

16

2004).  And "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."  Chambers v. Mississippi, 93 S. Ct. 1038, 1045 (1973).

Defendant contends that his supposed incompetency deprived him of the opportunity to present fully his case.  We reject Defendant's due-process-related contentions:  Defendant was competent to waive his right to counsel, and Defendant knowingly and voluntarily waived his right to counsel.  The record reflects that the District Court provided Defendant the opportunity to offer relevant evidence.  No -- no (plain or otherwise) -- error exists on this record. Defendant's due-process-related claims fail.

Ineffective Assistance of Trial Counsel

Whether a criminal defendant's counsel was ineffective represents a mixed question of law and fact that we review de novo.  United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002).  "We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record."  Id.

We find this record to be insufficiently developed for us to be able to consider Defendant's ineffective assistance of counsel claims on this direct appeal. For example, the record reflects no evidence about whether Defendant's counsel had reason to question Defendant's competence to stand trial on the question of Defendant's guilt. We decline to address Defendant's ineffective assistance of counsel claims in this direct appeal.

Issues Raised Only in Defendant's Pro Se Brief

In addition to his lawyer-filed brief with this Court, Defendant also raised some distinct claims in a pro se-brief filed earlier in this Court. Each of Defendant's pro se-claims is without merit.

Defendant contends that the District Court erred by not granting Defendant's change-of-venue request. We review denial of a change-of-venue request only for abuse of discretion. United States v. Campa, 459 F.3d 1121, 1143 (11th Cir. 2006) (en banc). Defendant did not (and cannot) carry the "extremely heavy" burden that we explicated in Campa. See id. The District Court did not abuse its discretion in denying Defendant's change-of-venue motion.

18

Defendant contends also that the District Court erred by not <u>sua</u> <u>sponte</u> ordering a competency hearing before trial or at least before verdict. The law requires a competency hearing only when information exists raising a "bona fide doubt" about a defendant's competency. <u>See</u> <u>Watts v. Singletary</u>, 87 F.3d 1282 (11th Cir. 1996). Here, in the light of all the record evidence, the District Court committed no error by not <u>sua</u> <u>sponte</u> ordering a competency hearing before trial or at least before verdict.

Defendant's remaining allegations in his <u>pro</u> <u>se</u>-brief to this Court largely involve allegations of lawyer ineffectiveness and of government and court misconduct. As discussed above, this record is insufficiently developed for us to address ineffective-assistance-of-counsel arguments in this direct appeal. And Defendant's arguments about government and court misconduct are unsupported by record evidence and demonstrate no reversible error.

CONCLUSION

In the light of the facts of this case, we AFFIRM Defendant's conviction and sentence.

AFFIRMED.